is 5-13-460 People v. Curtis J. Richard. Council may proceed. My name is Maggie Heine and I represent the defendant, Mr. Curtis Richard, in this matter. Mr. Richard pled guilty in July of 2006 to murder, and the factual basis in the criminal indictment included that a firearm was used. This was a negotiated plea in exchange for a sentencing range of 20 to 55 years. In September of 2006, Mr. Richard was sentenced to 55 years in prison. Now, what Mr. Richard did not know in July of 2006 is that the actual mandatory minimum for this charge was 45 years. Under these circumstances, this plea cannot be said to be knowing and intelligent, and this court should allow Mr. Richard to withdraw the plea. Now, we argue this under the plain error doctrine, as it is grave error to plead guilty without knowing the true penalty range. So this is a relatively simple case, because the law in this area has been long settled, and there's no disagreement to the salient facts, as far as I know. It's without contention to say that a guilty plea has to be knowing and intelligent. In Boykin, the U.S. Supreme Court held that it's reversible error to take a plea without having it on the record showing that that plea is knowing. Now, knowing means the defendant knows the nature of the charges, that he's giving up his right to trial, and important for this case, the penalties that he's facing. In fashioning this requirement of a record, the court recognized that a guilty plea is waiving many constitutional rights, including the most fundamental right of the accused, the right to a trial by jury. Now, in Illinois, our Supreme Court has brought in Rule 402. This rule ensures that every plea in Illinois complies with Boykin. It ensures that the transcripts of the guilty plea hearing reflect whether the defendant had previous information in pleading guilty. In this case, those transcripts reflect that Mr. Richard pled guilty based on that information. In July of 2006, the mandatory minimum for this charge was 45 years. Mr. Richard was repeatedly assured that it was 20 years. The trial court admonished him that 20 years was the minimum. Counsel didn't correct that admonishment. He negotiated for a sentencing range of 20 to 55 years. At sentencing, he argued for it. Counsel testified that he told Mr. Richard, you can hope for 20 to 30 years, but you should expect anything in the 40-year range. Does it appear from the record that everybody involved simply thought that that was the range, 20 to 50? It seems this may have been an honest mistake. I mean, that's what I'm saying. I mean, nobody didn't get caught at the time, the issue about the mandatory 25-year. From the record, it seems that everyone simply thought that 20 years was possible. But 20 years was never possible. And if it was true that you received anything below 45 years, it would have been subject to be taken away at any point under our name, regardless of whether it was an honest mistake. Under these circumstances, the plea can't be knowing and intelligent whether the mistake was intentional or not. Now, the disagreement that I do have with the state is over how you show prejudice, where there's a Rule 402 violation or a Boykin violation. But the Supreme Court dealt with this in Davis. There, the defendant believed that he was eligible for task at the time of pleading guilty. This was the only argument that he pressed in the Supreme Court, his actual belief and why it was reasonable for him to believe he was eligible. Now, the Supreme Court focused on the fact that the trial court had not admonished him that probation was not possible. So the Supreme Court focused on that admonishment error. The court held that it was grave error for the defendant to believe that a sentence below the minimum was possible and for the trial court to fail to admonish him as to the true mandatory minimum. Here, as in Davis, Mr. Richard believed that a sentence below the minimum was a true possibility, and the trial court admonished him that a sentence below the mandatory minimum was possible. Thus, like in Davis, this plea was not knowing and intelligent, and this court should allow withdrawal under the plain error doctrine. So the state relies on the recent case of Donaldson to suggest that there's no need for a remedy, but that again confuses prejudice for a Boykin or 402 violation. The prejudice here is that the defendant has waived fundamental rights without being able to make an informed decision. They're making a due process argument. It's a due process argument. He could not have intelligently and knowingly pled guilty, not knowing the true minimum and maximum terms of imprisonment. That's correct. I think particularly in this case where we have adherence to the motion to withdraw, where he and his counsel both are testifying that it was that low range that got him to plead guilty. This isn't a case where you have on the record them saying, oh, we just wanted to get death off the table. He said, I want it to 20 to 30. Counsel told me 20 to 30 would expect 40. So he truly wanted that lower range, and he was never going to get it. He was pleading from ignorance. In Donaldson, there simply wasn't an admonishment error at all, and there was no claim that the plea was not knowing. There was no due process argument. The only problem was a void plea problem. The court lacked statutory authority to enforce the plea without restructuring the sentence. Using contract principles, the Donaldson court found that there was no problem enforcing a restructured sentence because the agreement of the parties would still be intact. Here, you can't use contract principles to determine whether or not the plea itself was knowing and intelligent back in July of 2006. To get at that question, you have to look to those Rule 402 admonishments. In this case, they were simply incorrect. We know that from the record. We know that Mr. Richard pled guilty, ignorance to the minimum. And we know that he entered plea negotiations based on a lusory benefit that was never going to be there for him. The appellate court has dealt with this as recently as August of this year in the case of Williams, although there it was the mandatory maximum that was misstated. And I also think that so in arguing to affirm, the state is stuck saying there's no harm here because he got a sentence. So what are we worried about? But again, the harm is that he was pleading guilty without basic knowledge as to mandatory consequences. And again, the Supreme Court has already given us the answer in a case like this. In Kidd, the Supreme Court allowed withdrawal of a plea where the defendant was not clearly told the mandatory minimum. Now, the defendant in Kidd was repeatedly warned of what the maximum sentence was. And ultimately, this is the sentence that he received. Even though the defendant received a sentence which he knew was a possibility when he pled guilty, the Supreme Court allowed withdrawal. As a matter of law, the defendant could not knowingly plead guilty if he was truly ignorant as to the mandatory minimum. Here, Mr. Richard never decided to give up his right to a trial knowing that 45 years would follow. And as a result, his plea should not stand. If there are no questions. Thank you, counsel. Good morning, Your Honor. Good morning. Please, the court. Time. We were definitely in agreement on one thing off the bat, and that is that the court misinformed the defendant. Based on the people versus white, for sure, the defendant's based upon the charge and the factual basis provided by the prosecutor. That personal discharge of a weapon factor is there. And so, that 25 or life statute right now is there. And, of course, I think I would agree that this was just a mix-up. And perhaps they had intended not to negotiate. I don't know. It doesn't matter because it is what it is. And therefore, the sentencing range that was advised to the defendant was incorrect. The parties are also in agreement that the principal question here is one of prejudice. Listening to the arguments and listening to the comment from Justice Stewart in particular, I want to emphasize that although it's, of course, a due process question, the due process question is not strictly one of did he get or did not get the proper margin. As the case, the Supreme Court noted in the people versus Davis, the question is really, and I quote, whether real justice has been denied or whether the defendant has been prejudiced by any adequate margin. Isn't it prejudice to get him to plead guilty in the first place on the possibility that he could get a lower sentence than was possible? I'm going to go ahead and go right in there. I think that that's – there's a certain superficial appeal, and it was very well argued at the time, that the defendant entered his plea with, I think, a false expectation that he could ask for and possibly receive the sentence that would be well below the 45 years. Now, I think what's important to note, and I want to talk about Davis and his Williams case and the defendant's sites because I think when you look at those cases, it sort of illustrates the point that I'm getting to when I talk about the lack of prejudice in this case. The defendants, whatever his expectation was, they went in and they argued this thing fully. They asked for what they thought they were going to get. The judge said, you're getting 55 years, which was the cap that the parties agreed upon. So whatever the defendant's expectations were, it's not a matter of saying, well, there's no – counsel notes that there was no way the defendant was going to get it while it's running because the court wasn't going to give it to him. It wasn't a matter of a possibility that the court forego, except to the extent that it considered everything in the sentencing hearing, in fact, as an amputation of the patient. What does the ultimate sentence that the court gave him, what does that have to do with whether at the time of his plea, it was knowing and voluntary and intelligent? Okay. Well, again, when we talk about knowing and voluntary, we also talk about prejudice and denial of substantial justice. Okay. So when we look at what the parties went into in this case, they thought that they were going to be able to present to the court, and the court would consider a range between 55 years, the statement that this cap wasn't going to see financial assistance. Fifty-five years is a legal sentence. Okay. So the expectation of the parties as they go in, although it constitutes a range, which the defendant was not going to be able to get without risking himself to avoid the sentence or risking everybody. Nonetheless, the sentence that the ultimate got was a legal one. Now, I want to go from this to talk about Davis and Williams. Just to – nobody cited it, but since it was a case I was familiar with, I took a look at it. People v. Tripp, 248, Illinois Appellate 3rd, 706. Same argument was made there. That's a situation where the defendant was told at the guilty plea he could get anywhere from 20 to life. It was a double murder, showed up for sentencing, and the judge said, oops, I discovered that it's mandatory natural life, now you get mandatory natural life. And in that case, this court, in an opinion by Justice Rarick, concurred by Justice Goldenhurst, said when a defendant has been advised the minimum sentence is less than it actually is, he cannot be deemed to have made an intelligent decision because the range of possible penalties is greater than he believed. And on the argument about, well, he could have got life anyway, the court said it cannot be seriously argued that the possibility of life imprisonment can be equated with a mandatory life term. I mean, the same thing applies here, doesn't it? I mean, yeah, he ended up – sure, he could have gotten 55, even with a minimum of 45, but part of the – he couldn't have made an intelligent decision about pleading guilty thinking he might get 20. I'm so unfamiliar with Tripp, and I think the fundamental distinction between Tripp and this is that there's no possibility of the defendant getting anything within the expectation of the plea that he had been admonished to when he went into it. That's a natural life sentence, okay, that he had to get. The defendant's expectation in this case was 20 to 55. He got 55. 55 is a legal sentence. He wasn't denied. He had exactly what it was that he argued for in this case. Mr. Tripp did not. Okay. And I want to go on. I don't know if you're seeing this. Life imprisonment would have been a legal sentence for him, too. It would have been a legal – well, the state had given up life sentence in this case. So he wasn't going to get a life sentence in this case under any circumstances. He was going to get somewhere from 20 to 55. Well, I'm saying the Tripp case of life would have been a legal sentence, too. Right. Tripp was mandatory. He was not biased in the mandatory nature of that sentence. So it's not – it's a very small jump to say, well, he's obviously denied substantial justice in that case because his expectation of the plea was never going to be what he thought it was going to be because the sentence that he thought he was pleading guilty to was a factual and legal impossibility. That's not the case. Okay. He thought he could get lower than life. He pled guilty. Turns out he could only get life. Absolutely. In this case, he thought he could get 20 to 55. Turns out the judge gave him 55. Right. But he could not get less than 45. And, I mean, don't we have to examine this of what – whether it was a knowing and intelligent plea based on the knowledge he had at the time he pled guilty? I mean, you want to look back to what he actually got and then look back on it. Well, we're obviously operating under a certain set of circumstances and facts here where the defendant's never actually testified that but for those seven hours of guilty. So you're looking at this, and I'm not saying it's wrong necessarily, but you're looking at this through a very narrow vacuum of what was he admonished and what could he possibly get. Okay. And I think the distinction now between this and Tripp is that in Tripp, he was admonished of 20 to 60. He thought he was going to get a term of years. It goes to a plea. It goes to a sentencing. He gets an actual life. Oh, my gosh, I never expected that as a possibility under any circumstance for my plea. I've been denied substantial justice. The defendant in this case, although he wasn't going to get 20, he wasn't going to get 30, he wasn't going to get 40, he knew he could get up to 55 years. He got 55 years. He got the benefit of the bargain, and there was nothing, absolutely nothing, illegal, void, or anything about the sentence that he received. So, exactly, I guess the question is what substantial injustice did the defendant get? And I'm going to answer that by talking about the defendant's cases. How about John Zappa's right to go to trial? You can make that argument in every case. I mean, that's just so I always lose. In every case where an improper admonishment is given? You could, but when the Supreme Court has held that the mere statement of much more than a settlement on the trial is not enough, and I can pull that case for you because I did an argument not too long ago, a substantially similar case, is not enough to get you to that level of the prejudice where the court should allow the plea to be withdrawn. I'm blanking, so let me get to this case really quick. Davis and Williams. I'm going to talk about Davis real quick. Davis was a case where the defendant was told that he could receive task in probation as part of a plea. It turned out that that was not a possibility. And also he was sentenced and did not have the ability to get a task. Williams' case of defendant's license is basically sort of the same thing where the defendant was admonished that he was looking at a 30-year maximum sentence, so he took a negotiated 25. It turns out the maximum was 60. The appellate court held that well. You know, there's a big difference between thinking you can only negotiate it down five years from 25 years, okay? And what Davis says in what Williams' case says is in the situations where as a result of the defendant's misapprehension, he did not attempt to negotiate a lesser term of incarceration before going up to a trial where he was acquitted. Now, that's a quote from Davis, but, I mean, it's sort of the same sort of situation here where you're aware of the fact that he could have negotiated something lower. Well, in this case, instead of getting a sentence 25 years above what he heard here, I guess 35 years above what he thought it was, he got something that was 10 years. So the whole premise of, well, I've lost this, you know, I've lost something in this plea because I was operating in this illusion that I could get this or that, is in itself an illusion because under what circumstance would the defendant then be able to turn around and say, okay, I've noticed I've been able to negotiate something different. Now, I guess the point is that that operates within the set of facts that constitutes the absence of prejudice. In this case, the defendant received the benefit of the bargain. I'll complete the sentence. The defendant received the benefit of the bargain, and it was a situation where that benefit was actually not one that substantially was detrimental to the defendant because, obviously, the range in which he was looking at was actually near the minimum, not at the maximum end of what he was looking at. So there's so much more. Thank you, counsel. That was a long sentence. I think the main thing is that what Mr. Richard gave up is his right to trial, the right to a trial by jury. And when he made that decision, he thought, I might be looking at life. I could get 60 years, but, hey, maybe if I can get them to let me ask for 20, show them I'm going to go along with it, maybe the judge will put me in there for 20. You can have a life after 20 years in prison. That was not real. That was an illusion. That never would have happened. If that happened, the state would have been allowed to take it away any time it wanted to and force him to trial or to take a 45-year sentence, and that's under Arnum. Now, we do know more than just that the defendant was misadmonished. Because there was a hearing on the motion to withdraw and there were a lot of questions about how Mr. Richard was sentenced, we know the defendant pled guilty because he wanted something in the lower range. We know that counsel advised him 20 to 30 could be hoped under our 40-year range is what he should expect. So we know that the defendant was relying on this lower range, and he made that decision in July. I think perhaps the most important thing to realize is that based on the state's no prejudice analysis, Rule 402 would become optional whenever you have a negotiated plea. Nothing about negotiated pleas negates the court's duty under Rule 402 to make sure the defendant knows the basic facts when he goes to negotiate a plea with the state. Nothing in Donaldson hints that the Supreme Court would ever consider an exception to Rule 402 protection. And this would be a radical notion because Rule 402 is simply ensuring that guilty pleas are honoring the due process clause as interpreted in Boykin. Now, where our system is increasingly dependent on guilty pleas, it's more important that we make sure that each of those is knowing and intelligent. If there's a Lloyd plea, we'll have to deal with the remedy as they did in Donaldson and as they did in White. But where there's a plea that's taken in violation of due process, they can't stand just because we don't want to give someone their right to trial. And that's what's happened in this case. So I would urge this court to simply send this back so that Mr. Richard can make a real knowing and intelligent decision about his guilty plea. Is there no questions? Questions? Thank you, counsel. We'll take a brief recess. We'll call you next, please.